# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN EGAN, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | |
| LIVE NATION WORLDWIDE, INC., | Filed Electronically |
| Defendant. | |

## CLASS ACTION COMPLAINT

COMES NOW, John Egan, ("Plaintiff") on behalf of himself and all others similarly situated and alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this action individually and on behalf of all others similarly situated against Live Nation Worldwide, Inc. ("Defendant"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, (the "ADA") and its implementing regulations, in connection with Defendant's unlawful policies and practices regarding the sale of tickets for accessible seating on Defendant's websites and at Defendant's entertainment venues.

2.      The ADA, enacted over a quarter century ago, is intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

3.      Plaintiff, a wheelchair user who is limited in the major life activity of walking, is a member of a class of persons whose rights to full and equal access are protected by the ADA.

4.      Defendant owns and operates over one hundred entertainment venues, including Key Bank Pavilion, in Burgettstown, Washington County, Pennsylvania.

5.      Defendant also sells tickets to the public through multiple websites it owns and/or operates including www.ticketmaster.com, www.livenation.com, and www.ticketweb.com (collectively the "Websites").

6.      The ADA requires public accommodations that sell tickets for single events or for a series of events to implement policies, practices or procedures to ensure that individuals with disabilities have an equal opportunity to purchase tickets for accessible seating:

(A)    During the same hours;

(B)    During the same stages of ticket sales, including, but not limited to, pre-sales, promotions, lotteries, wait-lists, and general sales;

(C)    Through the same methods of distribution;

(D)    In the same types and numbers of ticketing sales outlets, including telephone service, in-person ticket sales at the facility, or third-party ticketing services, as other patrons; and

(E)    Under the same terms and conditions as other tickets sold for the same event or series of events.

28 C.F.R. 36.302(f)(ii).

7.      As set forth in detail below, Plaintiff attempted to purchase accessible tickets for a concert through one of Defendant's websites and directly through Defendant's Key Bank Pavilion venue but was unable to successfully execute the purchase because of Defendant's inadequate policies, practices and procedures which caused Defendant to be in violation of the ADA, generally, and 28 C.F.R. 36.302(f)(ii), specifically.

8.      Plaintiff's experiences are not an aberration.  Defendant's policies, practices and procedures regarding the sale of accessible tickets have been inadequate since at least as early as the late 1990s and as a result Defendant has routinely violated the ADA over an extended period of time notwithstanding repeated formal agreements to come into compliance with the applicable laws and regulations.

9.      Unless Defendant is required to modify its current policies and practices regarding the sale of accessible tickets both online and at its venues, Plaintiff and the proposed Class will continue to be denied full and equal access to Defendant's services and venues, and will be deterred from fully using Defendant's services and venues.

10.     Because Defendant has routinely violated agreements to modify its unlawful conduct in the past, the injunctive relief being requested by Plaintiff on behalf of the proposed class must necessarily include a robust monitoring and/or audit component to ensure that Defendant actually follows any injunctive mandate that the Court issues as a result of this action.

11.     Consistent with 42 U.S.C. § 12188(a), Plaintiff seeks a permanent injunction requiring:

    a)  that Defendant modify its policies and practices regarding the sale of
        accessible tickets both online and at its venues so that Plaintiff and the
        members of the class have full and equal access to Defendant's ticket
        services and venues; and

    b)  that Plaintiff's experts and other representatives including counsel shall
        monitor Defendant's policies and procedures both online and at its venues
        to ensure that any injunctive relief ordered by the Court is actually followed.

12.     Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2), which was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief individually and for the benefit of a class of similarly situated individuals.

## JURISDICTION AND VENUE

13.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188(a).

14.     Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

15.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

16.     Plaintiff, John Egan, at all times relevant hereto, is and was a resident of Allegheny County, Pennsylvania.  Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

17.     Defendant Live Nation Worldwide, Inc., is a Delaware corporation with its principal place of business located in Beverly Hills, California.  Defendant is a public accommodation pursuant to 42 U.S.C. §12181(7).

## PLAINTIFF'S FACTUAL ALLEGATIONS

18.     On March 26, 2017, Plaintiff learned that the Counting Crows would be performing at Defendant's Key Bank Pavilion venue on September 12, 2017.

19.     Through the Counting Crows Facebook page, Plaintiff further learned that Defendant would be holding a pre-sale to purchase tickets on March 28, 2017.  Tickets were scheduled to go on sale to the general public on March 31, 2017.

20.     On March 28, 2017, Plaintiff visited Defendant's Ticketmaster website, entered the presale code "CROWS17," and attempted to purchase an accessible wheelchair seat and a companion seat during the pre-sale.  He was unable to purchase his desired seating and received a

message on Defendant's website stating, "Sorry we don't have any accessible seating available at the moment."

21.    Plaintiff called Defendant's help line for assistance, and was told that Defendant does not sell accessible seating during pre-sales.  When Plaintiff informed Defendant's customer service representative how unfair this was he was told there was nothing that could be done, and the customer service representative suggested that Plaintiff contact Defendant's Key Bank Pavilion venue directly.

22.    As instructed by Defendant's representative, Plaintiff next called the Key Bank Pavilion.  He again was told that he was not able to purchase accessible seating during pre-sales. The employee he spoke with told him that she would take his name and number and have someone call him to help him with his request for accessible seating.  Plaintiff never received a call.

23.    Also on March 28, 2017, Plaintiff sent an e-mail to Defendant's customer support e-mail address, stating:

"I tried to order 2 tickets to the Counting Crows & Matchbox 20 show in Burgettstown, PA on September 12, 2017.  The tickets went on pre-sale today if you used the code Crows17.  I tried to pre-order my seats, which one is a wheelchair accessible seat and I cannot order them.  Everyone else is able to pre-order their seats using the code except for those of us needing accessible seating.  Is that not illegal?  Is that not discrimination?  Why aren't individuals with disabilities able to pre-order seats just like other fans?  I'm furious!  This venue's handicapped seating is awful.  It is on the ends of the sections, which means if you don't get your seats early, you stare at the side of amps.  I spoke to Ticketmaster, they told me there was nothing I could do.  Ticketmaster suggested I call the venue.  I spoke to the venue. They told me to contact Ticketmaster.  Can someone please tell me why individuals with disabilities needing accessible seating are not give the same opportunity to pre-order tickets like everyone else?"

24.    On March 29, 2017, Plaintiff again visited Defendant's Ticketmaster website and attempted to purchase accessible seating as part of Defendant's pre-sale.  He was once again unable

to purchase accessible seating, and received the same message that he had received during his previous attempt to purchase tickets through the website.

25.     Plaintiff once more called Defendant's help line for assistance and was again informed that Defendant does not make accessible seats available for purchase during pre-sales. Plaintiff told the customer service representative that Defendant was violating the ADA.  At this point, Plaintiff was told that all accessible seating was sold out.  Plaintiff pointed out that this representation was inconsistent with what he had been told by Defendant's other help line employees.  The representative told Plaintiff to contact Key Bank Pavilion, indicating that they might be able to help him.

26.     Plaintiff again contacted Key Bank Pavilion and explained that he was trying to purchase accessible seating as part of the pre-sale.  A Key Bank employee reiterated that accessible seating was not available pre-sale.  Plaintiff informed the employee that such conduct was discriminatory.  The employee stated that was not her issue and stated that Plaintiff was required to wait until seats went on sale to the general public.

27.     On March 30, 2017—two days after Plaintiff's sent the above-described e-mail to Defendant's customer support e-mail address--Plaintiff received an e-mail response from Defendant's customer support personnel stating:

> "Thanks for contacting us.  My name is Samuel and I'll be helping with all your questions today!
>
> We are terribly sorry you are having issues with ordering accessible seats through our Ticketmaster website.  If you like we can see if we can assist you with placing 2 accessible seats on hold for you.  Please reply to this e-mail . . . and we will complete your request right away."

28.     In addition to violating the ADA, the suggestion set forth in Defendant's e-mail response was unavailing to Plaintiff because he is susceptible to sensory seizures and the specific

location of available accessible seating within Key Bank Pavilion was important to Plaintiff. Thus, he needed to actually see what specific accessible seats were being offered in order to assess their suitability.

29.     As a result of his experiences attempting to purchase accessible seating from Defendant for the Counting Crows concert at Defendant's Key Bank Pavilion, Defendant felt both frustrated and humiliated.

### DEFENDANT'S LONG HISTORY OF SIMILAR VIOLATIONS OF THE ADA

30.     Defendant and its corporate predecessors have had a pattern and practice of violating the ADA's requirements related to tickets for accessible seating since at least the late 1990s. Indeed, Defendant and its corporate predecessors have been engaged in the same illegal practices that are at issue in this lawsuit since the late 1990s.

31.     For example, in 2005 Defendant entered into a settlement agreement with the United States Department of Justice ("DOJ") in connection with its unlawful practices related to accessible seating. The Settlement Agreement in that matter included a Factual Background section, which stated:

> From 1998 through 2002, the United States has received complaints from individuals with disabilities who have been unable to purchase tickets for Accessible Seats for Attractions or who have been unable to purchase such tickets in a manner that is equal to that afforded non-disabled Consumers. These complaints challenge several different practices, and include:
>
> *Requiring individuals who seek to purchase tickets for Accessible Seats and Companion Seats over the Internet, to do so through a series of e-mail communications with a Sales Agent, while individuals seeking to purchase tickets for non-accessible seats can consummate their purchase directly on the website, in a matter of minutes;
>
> *Failure of a Sales Agent receiving email communications to respond in a timely fashion;

*Requiring individuals to wait long periods of time when purchasing tickets for Accessible Seating over the telephone while they waited for a customer service agent who was trained to sell tickets for Accessible Seats;

*Inability to purchase tickets for Accessible Seats in a "pre-sale;"

*Perception that [Defendant's corporate predecessor] does not retain sufficient Accessible Seating tickets.

Settlement Agreement dated December 22, 2005, between DOJ and Ticketmaster, LLC.

32.     Defendant's unlawful practices regarding accessible seating have continued unabated notwithstanding the DOJ settlement in 2005.

33.     For instance, in July 2012 Defendant was sued in a class action lawsuit relating to its accessible seating practices and policies at the Walt Disney Concert Hall and the Hollywood Bowl in Los Angeles, California (the "LA Class Action").

34.     Defendant entered into a class settlement agreement regarding the LA Class Action in 2013.  The Notice explaining the settlement stated:

[P]urchasers of accessible and companion seating will be afforded the same opportunity to locate and purchase particular seats *at the same time as they are made available to purchasers of non-accessible seating*.

(emphasis added).

35.     Defendant's unlawful practices have continued unabated notwithstanding the LA Class Action settlement in 2013.

36.     As a result of Defendant's inadequate policies, practices and procedures, and notwithstanding its past agreements to change these practices and follow the applicable requirements of the ADA, Defendant continues to violate the law.

37.     As a result, Plaintiff and members of the class have been denied equal access to Defendant's services and entertainment venues and will continue to be denied equal access unless this Court enters the requested injunctive relief.

38.     Plaintiff wishes to use Defendant's ticket services and continue visiting Defendant's venues.  He has repeatedly used Defendant's services and visited Defendant's venues in the past.

39.     However, Plaintiff will be deterred and impeded from accessing and using Defendant's services and venues, so long as Defendant continues to employ the same policies and practices that have and will prevent Plaintiff from obtaining tickets, or will cause Plaintiff significant difficulty in obtaining tickets.

40.     As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendant, employ policies and practices that impede full accessibility to individuals with disabilities.

## CLASS ALLEGATIONS

41.     Plaintiff brings this class action on behalf of himself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, and seeks to certify the following class: all wheelchair users who have attempted, and/or will attempt, to purchase accessible and/or companion seating through Defendant's websites or through one of Defendant's venues.

42.     Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable.  The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

43.     Typicality:  Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

44.  <u>Common Questions of Fact and Law:</u>  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's services and venues due to the policies and practices described above.

45.  <u>Adequacy of Representation:</u>  Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

46.  Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

## SUBSTANTIVE VIOLATION

47.  The allegations contained in the previous paragraphs are incorporated by reference.

48.  Plaintiff, a wheelchair user, is an individual with a disability within the meaning of the ADA.  42 U.S.C. § 12102(1)(A).

49.  Defendant, a service, sales and entertainment establishment, and a place of entertainment, recreation and public gathering, is a public accommodation under the ADA.  42 U.S.C. § 12181(7).

50.  Title III of the ADA prohibits discrimination against individuals with disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.  42 U.S.C. § 12182(a).

51.     Title III defines discrimination generally as denying individuals with disabilities, either directly, or through contractual, licensing, or other arrangements, the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity, 42 U.S.C. § 12182(b)(1)(A)(i), or providing individuals with disabilities, either directly, or through contractual, licensing, or other arrangements, an unequal opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

52.     Title III defines discrimination specifically as:

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

42 U.S.C. § 12182(b)(2)(A)(ii).

53.     Title III's implementing regulations require public accommodations that sell tickets for single events or for a series of events to modify their policies, practices or procedures to ensure that individuals with disabilities have an equal opportunity to purchase tickets for accessible seating:

(A)     During the same hours;

(B)     During the same stages of ticket sales, including, but not limited to, pre-sales, promotions, lotteries, wait-lists, and general sales;

(C)     Through the same methods of distribution;

(D)     In the same types and numbers of ticketing sales outlets, including telephone service, in-person ticket sales at the facility, or third-party ticketing services, as other patrons; and

(E)     Under the same terms and conditions as other tickets sold for the same event or series of events.

28 C.F.R. 36.302(f)(ii).

54.     Defendant's policies and practices regarding the sale of accessible tickets through its websites and venues have violated the ADA and its implementing regulations.

55.     Defendant's policies and practices generally violate the ADA by denying Plaintiff and the members of the class the opportunity to benefit from Defendant's goods, services, facilities, privileges, advantages, or accommodations, and by providing Plaintiff and the members of the class unequal access to Defendant's goods, services, facilities, privileges, advantages, or accommodations.

56.     Defendant's policies and practices specifically violate the ADA by failing to provide Plaintiff and the class members an equal opportunity to purchase accessible seating during the same hours and same stages of ticket sales, through the same methods of distribution, in the same types and numbers of ticketing sales outlets, and under the same terms and conditions as other tickets sold.

57.     Defendant should be required to make the following modifications to its policies and practices:

(A)     Sell accessible seating during the same hours as non-accessible seating is sold;

(B)     Sell accessible seating during the same stages as non-accessible seating is sold;

(C)     Sell accessible seating through the same methods of distribution as non-accessible seating is sold;

(D)     Sell accessible seating under the same terms and conditions as other tickets are sold;

(E)     Sell accessible seating in the same types and numbers of ticketing sales outlets; and

(F)     All other modifications required to afford Plaintiff and the members of the class full and equal access to Defendant's services.

58.     Plaintiff's requested modifications are reasonable and are necessary to afford Defendant's goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.

59.     Without Plaintiff's requested modifications, individuals with disabilities will be denied access to Defendant's goods, services, facilities, privileges, advantages, or accommodations, and will not be able to enjoy the same level of access, benefit and advantage afforded to persons without disabilities.

60.     Defendant's conduct is ongoing and continuous, and Plaintiff and the class members have been and will be harmed by Defendant's conduct.

61.     Unless Defendant is restrained from continuing its ongoing and continuous course of conduct Defendant will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the Class.

62.     Defendant's failure to comply with the ADA and its ongoing discrimination entitle Plaintiff and the Class to declaratory and injunctive relief, as well as costs and reasonable attorneys' fees.  42 U.S.C. § 12188(a).

### **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, individually and on behalf of the members of the class, prays for:

a.      A declaratory judgment that Defendant is in violation of the general and specific requirements of Title III of the ADA and its implementing regulations as described above, in that Defendant's has failed to provide full

13

and equal access to its services and has failed to modify its policies and practices in order to afford its services to Plaintiff and the Class;

b.      A permanent injunction pursuant to 42 U.S.C. § 12188(a), which directs (i) Defendant to modify and change its policies and practices regarding ticket sales in order to afford full and equal access to Plaintiff and the members of the class; and (ii) that Plaintiff shall monitor Defendant's policies and practices to ensure that the injunctive relief ordered above is implemented and remains in place.

c.      An Order certifying the class proposed by Plaintiff, and naming Plaintiff as class representative and appointing Plaintiff's counsel as class counsel;

d.      Payment of costs of suit;

e.      Payment of reasonable attorneys' fees; and

f.      The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: April 7, 2017                         Respectfully submitted,

                                             */s/ R. Bruce Carlson*
                                             R. Bruce Carlson
                                             Gary F. Lynch
                                             Kevin Abramowicz
                                             CARLSON LYNCH SWEET KILPELA &
                                             CARPENTER, LLP
                                             1133 Penn Avenue, 5th Floor
                                             Pittsburgh, PA 15222
                                             (412) 322-9243
                                             (412) 231-0246
                                             bcarlson@carlsonlynch.com
                                             glynch@carlsonlynch.com
                                             kabramowicz@carlsonlynch.com

                                             *Attorneys for Plaintiff*