# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN EGAN,

        Plaintiff,

v.

LIVE NATION WORLDWIDE, INC.,

        Defendant.

2:17-cv-445

## OPINION

**Mark R. Hornak, United States District Judge**

This is a case about buying rock concert tickets online, and the forum in which a dispute about doing that should be resolved. Now before the Court is Defendant Live Nation Worldwide, Inc.'s ("Defendant's") Motion to Compel Arbitration, ECF No. 35. For the reasons that follow, the Court concludes that Defendant has not demonstrated the existence of a valid agreement to arbitrate. Accordingly, the Motion at ECF No. 35 is denied.

## I.   Facts

Plaintiff John Egan ("Plaintiff" or "Egan") is a wheelchair user who says that Defendant's practice of not selling wheelchair-accessible seating during ticket presales violates the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"). (Compl., ECF No. 1, ¶¶ 1, 3.) According to his Complaint, on March 26, 2017, Plaintiff learned that the Counting Crows would be performing at KeyBank Pavilion, a venue owned by Defendant in Burgettstown, Pennsylvania, on September 12, 2017. (*Id.* ¶¶ 4, 18.) Tickets were scheduled to go on sale to the general public on March 31, 2017, with presale tickets available on March 28, 2017. (*Id.* ¶ 19.) On March 28 and

29,[1] Plaintiff attempted to purchase presale tickets for the concert from Defendant's website, but both times he received an electronic message stating, "Sorry we don't have any accessible seating available at the moment." (*Id.* ¶¶ 20, 24.) Plaintiff twice called Defendant's helpline for assistance and was told that Defendant does not sell accessible seating during presales. (*Id.* ¶¶ 21, 25.) Plaintiff also contacted the concert venue and emailed Defendant's customer support team, but did not receive a solution that worked for him. (*Id.* ¶¶ 22–23, 26–28.)

Defendant asks the Court to compel Plaintiff to arbitrate his claims and to stay this case pursuant to an arbitration provision in Defendant's Terms of Use.[2] (Def.'s Mot. to Compel Arbitration, ECF No. 35.)

## II. Legal Standard

The Federal Arbitration Act ("FAA") requires district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. 9 U.S.C. § 3; *James v. Global TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017). A party seeking to compel arbitration must first demonstrate that a valid agreement to arbitrate exists. *See Schwartz v. Comcast Corp.*, 256 F. App'x 515, 519 (3d Cir. 2007). "Because '[a]rbitration is a matter of contract between the parties,' a judicial mandate to arbitrate must be predicated upon the parties' consent." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)). Thus,

---

[1] The record is unclear regarding the precise dates that Plaintiff attempted to purchase Counting Crows tickets from Defendant's website. The Complaint alleges Plaintiff visited the website on March 28 and 29, 2017. (Compl., ECF No. 1, ¶¶ 20, 24.) Plaintiff's Declaration states that he visited the website on March 28 and 30, 2017. (Egan Decl., ECF No. 38, ¶ 3.) Similarly, Exhibit C to Plaintiff's Declaration is a screenshot of an iPhone taken on March 30, 2017, showing the Ticketmaster page where Plaintiff attempted to purchase tickets for the concert. (Egan Decl. Ex. C, ECF No. 38-3.) Except when referring to Exhibit C, the Court will follow the facts as alleged in the Complaint (March 28 and 29, 2017).

[2] Defendant filed its original Motion to Compel Arbitration on June 2, 2017. (ECF No. 18.) Thereafter, the Court allowed a period of discovery targeted at this issue until October 4, 2017. (*See* Order of June 26, 2017, ECF No. 28; Order of August 21, 2017, ECF No. 31; Order of September 1, 2017, ECF No. 34.) Defendant filed the present Motion, ECF No. 35, following this discovery period.

2

before ordering arbitration, a court must be "satisfied that the making of the agreement for arbitration . . . is not in issue." 9 U.S.C. § 4. "[Q]uestions of arbitrability, including challenges to an arbitration agreement's validity, are presumed to be questions for judicial determination." *Guidotti*, 716 F.3d at 773 (quoting *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012)).

Where the existence of an agreement to arbitrate is in issue, courts apply the summary judgment standard to motions to compel arbitration. *Id.* at 776. District courts "apply the relevant state contract law to questions of arbitrability, which may be decided as a matter of law only if there is no genuine issue of material fact when viewing the facts in the light most favorable to the nonmoving party." *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288–89 (3d Cir. 2017).

## III. Analysis

Defendant has put forth two grounds for which it asks the Court to find that there is a valid agreement between Plaintiff and Defendant to arbitrate the present dispute: Plaintiff's alleged online ticket purchase for a Madonna concert in 2012, and Plaintiff's attempt to purchase tickets online for a Counting Crows concert in 2017 (the basis of the Plaintiff's claim). (Def.'s Br. in Supp. of Mot. to Compel Arbitration, ECF No. 36, at 5.)

First, according to Defendant, Plaintiff bought Madonna concert tickets online through Ticketmaster.com from a desktop computer on February 24, 2012, during which he "was required to affirmatively accept the Terms of Use in order to complete his online transaction." (Han Decl., ECF No. 35-4, ¶ 2.) Exhibit A of David Han's Declaration[3] is purportedly the Terms of Use that

---

[3] Mr. Han works for Defendant, which also owns Ticketmaster.

3

were in vogue when Plaintiff purchased these tickets in 2012, which include a binding arbitration provision. (*Id.*; Han Decl. Ex. A, ECF No. 35-5, at 1, 10.)

Second, Defendant asserts that Plaintiff's attempt to purchase tickets to the Counting Crows concert in 2017 using his iPhone constitutes an agreement to arbitrate because "when Plaintiff signed into his account on March 28 and 29, 2017, he had to demonstrate by clicking a button that he affirmatively expressed his agreement to be bound by the arbitration provision contained in the Terms of Use before attempting to purchase tickets." (Def.'s Br. in Supp. of Mot. to Compel Arbitration, ECF No. 36, at 5.) Additionally, by the nature of Plaintiff's interactions with the website, Defendant claims that Plaintiff necessarily navigated past a page that stated: "By continuing past this page, you agree to our Terms of Use." (*Id.* at 4–5.)

### A. Choice of Law

Before analyzing whether either the alleged 2012 purchase or the 2017 attempted purchase established an agreement to arbitrate the present dispute, the Court must decide which substantive law to apply. To determine whether the parties have agreed to arbitrate, courts apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

The parties have not briefed the issue of which state's law the Court should apply. Plaintiff is a Pennsylvania resident. Although Defendant is incorporated in Delaware with its principal place of business in California, Plaintiff accessed Defendant's website in Pennsylvania, and the venue of the Counting Crows concert for which Plaintiff attempted to purchase tickets (KeyBank Pavilion, which Defendant owns) is located in Pennsylvania. The arbitration provisions in both the 2012 and the 2017 Terms of Use provided by Defendant state that the agreement is "governed by and construed in accordance with federal law to the fullest extent possible," and neither version of

4

the Terms of Use directs which substantive state law should apply in determining whether the parties have agreed to arbitrate. (*See* Han Decl. Exs. A & B, ECF Nos. 35-5, 35-6.) Accordingly, because neither party has asserted that a different state law should apply, the entirety of the events giving rise to this claim occurred in Pennsylvania, and the arbitration provisions contain no choice-of-law clause related to substantive state law, the Court will apply the law of the forum state, Pennsylvania, to determine whether the parties have agreed to arbitrate. *See, e.g., Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 677 (2007) ("Where the parties have not identified a conflict in state law, we will generally apply the law of the forum state." (citing *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993))).

Contract formation under Pennsylvania law requires "(1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)). In Pennsylvania, like most other states, mutual assent is the "touchstone of any valid contract." *Bair v. Manor Care of Elizabethtown, PA, LLC*, 108 A.3d 94, 96 (Pa. Super. Ct. 2015).

### B. Alleged 2012 Ticket Purchase

As to Plaintiff's alleged 2012 ticket purchase,[4] the Court concludes that Defendant has not produced competent evidence to demonstrate that the Terms of Use included as Exhibit A to David Han's Declaration, ECF No. 35-5—which Defendant asserts constitutes a binding arbitration

---

[4] Plaintiff states that he does not recall purchasing Madonna concert tickets from Defendant's website on February 24, 2012. (Egan Decl., ECF No. 38, ¶ 10.) Plaintiff says that he is not particularly hung up on Madonna, stating, "I also am not a Madonna fan, so I would not have wanted to purchase tickets for any such concert." (*Id.* ¶ 11.) The Court notes that testimony that one does not recall an event is not equivalent to testimony that it did not happen, and a failure to recall an event without a denial that it happened is insufficient to create an issue of material fact. *See EEOC v. Bob Evans Farms, LLC*, 275 F. Supp. 3d 635, 642 n.6 (W.D. Pa. 2017) (collecting cases). That said, given the Court's conclusion that Defendant's evidence is insufficient to demonstrate that the parties entered into a valid agreement to arbitrate based on this alleged 2012 purchase, and Plaintiff's statement is not an admission that he did buy those tickets, Plaintiff's averment does not resolve the matter.

agreement—were in fact the Terms of Use in effect at the time of Plaintiff's alleged purchase in 2012, and that Plaintiff would have necessarily had to have agreed to those terms to purchase the Madonna tickets.

Under Federal Rule of Evidence 901, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). One way to authenticate evidence is by testimony of a witness with knowledge that an item is what it is claimed to be. Fed. R. Evid. 901(b)(1); *see also* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Defendant appears to attempt to authenticate Exhibit A through David Han's Declaration, where he states, "I have personal knowledge of the facts set forth herein . . . ." (Han Decl., ECF No. 35-4, ¶ 1.) However, this Declaration is the only evidence offered by Defendant to verify the purported 2012 Terms of Use, and Mr. Han actually cannot speak from personal knowledge because he did not begin working for Defendant until 2013. (Han Dep., ECF No. 39-2, 74:25.)

Plaintiff conceded during oral argument that he had no affirmative evidence to dispute whether these terms were or were not in effect in 2012; however, under Rule 901, the burden is on the proponent of the evidence to sufficiently demonstrate that the item is authentic, and under the substantive law for resolving this Motion, that there is sufficient evidence to support its claim. Defendant has produced no competent evidence beyond David Han's Declaration to verify the existence and methodology of the 2012 Terms of Use, and it has not explained how Mr. Han could have gained personal knowledge of the previous content of the website. Although Mr. Han suggested multiple times in his deposition testimony that he could use the website's "code" to

recreate various pages as Plaintiff allegedly would have seen them on February 24, 2012,[5] this actually proved to not be possible. As Mr. Han stated in a second Declaration, "Although Defendant has the code version controlled, the software tree is now different, the infrastructure has changed such that the code cannot be deployed, and the data sets and application programming interfaces have changed." (Han Decl. of Oct. 27, 2017, ECF No. 40-1, ¶ 2.) This being the case, Plaintiff's challenge to Mr. Han's personal knowledge of the contents of Defendant's website in 2012 is well taken, and Exhibit A to David Han's Declaration—the purported 2012 Terms of Use—has not been sufficiently authenticated. Without such evidence, the Court cannot conclude that Plaintiff agreed to arbitrate with Defendant in 2012.

Although the Court need not reach the next issue in light of its conclusion regarding the insufficiency of Defendant's evidence in support of its argument, the Court also questions whether a reasonable internet user would understand that by using the website—including, according to Defendant, clicking anything on a page that included the text "[b]y continuing past this page, you agree to our Terms of Use"—under the purported 2012 Terms of Use, that user was agreeing to forever arbitrate any dispute with Defendant, even a dispute completely unrelated to the use of the website at that time.[6] As with any other contract situation, if there is no meeting of the minds on

---

[5] *See, e.g.*, Han Dep., ECF No. 39-2, 18:23–20:3; 20:13–21:9; 21:10–22:15; 34:19–36:8.

[6] During oral argument, counsel for Defendant stated (in response to the Court's hypothetical question) that Defendant's arbitration provision would require arbitration in a negligence action where, for example, a plaintiff (who had used Defendant's website years earlier) slipped and fell at Defendant's headquarters—an injury completely unrelated to the plaintiff's purchase of tickets or previous use of the website. (*See* Han Decl. Ex. A, ECF No. 35-5, at 10–11 ("Live Nation and you agree to arbitrate all disputes and claims between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to . . . claims arising out of or relating to *any aspect* of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or *any other legal theory*, including, *without limitation*, claims relating to your use of Live Nation's website . . . claims that arose before this or any prior Agreement . . . [and] claims that may arise after the termination of this Agreement." (emphasis added)).)
    Interestingly, the arbitration provision in Defendant's 2017 Terms of Service is significantly narrower in this regard, as it applies only to "[a]ny dispute or claim relating in any way *to your use of the Site, or to products or services sold or distributed by us or through us* . . . ." (Han Decl. Ex. B, ECF No. 35-6, at 6.)

7

the terms of the contract, there is no contract. *See, e.g., Morosetti v. La. Land & Expl. Co.*, 564 A.2d 151, 153 (Pa. 1989).

During oral argument, counsel for Defendant opined (seemingly both off-the-cuff and out of thin air) that the arbitration agreement in the 2012 Terms of Use might only last ten years from the date of the agreement. This temporal limitation is not supported by the text of the 2012 Terms of Use (or anything else in the record), and at any rate, the Court is skeptical that a reasonable internet user would understand that they were agreeing to arbitrate *any* claim at all—based in contract, tort, or any other kind of law, including claims wholly unrelated to the use of the website or tickets purchased from Defendant—merely by using Ticketmaster's website. In this case, the 2012 purchase and the 2017 attempted purchase were more than five years apart, and Plaintiff's claim is entirely unrelated to his alleged use of the website in 2012 or the Madonna concert. Under these circumstances, the reasonableness and substantive conscionability of the arbitration provision may fairly be questioned. If Defendant had shown that the parties agreed to arbitrate, these questions might well be left to the arbitrator based on the delegation clause in the arbitration provision. (*See* Han Decl. Ex. A, ECF No. 35-5, at 10.) However, as explained above, Defendant failed to establish the existence of such an agreement. Accordingly, the Court cannot conclude as a matter of law that there was a valid agreement to arbitrate Plaintiff's current ADA claim based on Plaintiff's alleged 2012 purchase of Madonna concert tickets from Defendant's website.

### C. 2017 Attempted Ticket Purchase

As to Plaintiff's 2017 attempted ticket purchase, the evidence in the record does not sufficiently demonstrate under the summary judgment standard that when Plaintiff saw the webpage informing him that accessible seating was not available for presale, he had necessarily agreed to the Terms of Use by proceeding past previous pages that stated, "[b]y continuing past

this page, you agree to our Terms of Use" (the "Terms of Use disclosure").[7] First, Defendant asserts that the 2017 purchase attempt constitutes an agreement to arbitrate because "when Plaintiff signed into his account on March 28 and 29, 2017, he had to demonstrate by clicking a button that he affirmatively expressed his agreement to be bound by the arbitration provision contained in the Terms of Use before attempting to purchase tickets." (Def.'s Br. in Supp. of Mot. to Compel Arbitration, ECF No. 36, at 5.) A number of Defendant's exhibits are screenshots of the "Create Account" or "Account Sign-In" pages that include the Terms of Use disclosure at the bottom of the screen, both from desktop and mobile versions. (*See* Han Decl. Ex. D, ECF No. 35-8; Ex. E, ECF No. 35-9; Ex. J, ECF No. 35-14; Ex. K, ECF No. 35-15.) But there is no evidence in the record that Plaintiff ever signed into (or created) a Ticketmaster account during his 2017 attempt to purchase tickets. Defendant's website requires users to sign in before they can *purchase* tickets through the site—a user does not have to sign in simply to view the site. (Han Decl., ECF No. 35-

---

[7] Currently in the record relevant to this issue is the following: David Han's Declaration, which states that "[s]ince at least 2007, the home page and virtually all interior pages of the ticketmaster.com website—whether accessed from a desktop computer or a smart phone such as an iPhone—have clearly stated that the use of the site is subject to the Terms of Use" (Han Decl., ECF No. 35-4, ¶ 4); the Terms of Use in effect when Plaintiff attempted to purchase tickets on March 28 and 29, 2017, which include a mandatory arbitration provision (Han Decl. Ex. B, ECF No. 35-6, at 1, 6); a screenshot of Ticketmaster's Homepage (date unclear), which includes the Terms of Use disclosure at the bottom of the screen (Han Decl. Ex. C, ECF No. 35-7); a screenshot of Ticketmaster's Create Account page (part of the process to purchase tickets) with an "Accept and Continue" button and the Terms of Use disclosure at the bottom (Han Decl. Ex. D, ECF No. 35-8); a screenshot of Ticketmaster's Account Sign-In page (also part of the process to purchase tickets, if the customer already has an account) with the Terms of Use disclosure at the bottom (Han Decl. Ex. E, ECF No. 35-9); a screenshot of the Payment page, where customers enter their billing information and click "Submit Order" to complete their purchase, which also includes the Terms of Use disclosure at the bottom (Han Decl. Ex. F, ECF No. 35-10); screenshots of the mobile versions of the Ticketmaster Homepage, Create Account page, Account Sign-In page, and Payment page, all of which include the Terms of Use disclosure at the bottom of the screen (Han Decl. Exs. I, J, K, & L, ECF Nos. 35-13–35-16); and a screenshot of the "Event Info" page for a Rob Delaney comedy show on May 12, 2012, which appears to be from the mobile version of the website, and which does *not* include the Terms of Use disclosure at the bottom of the page (Han Decl. Ex. M, ECF No. 35-17). Each of these Exhibits were offered by Defendant. Plaintiff offered the following relevant exhibits: a photograph of (presumably) Plaintiff's iPhone 5, showing a post on the Counting Crow's Facebook page with a link to the presale tickets that Plaintiff attempted to purchase on March 28 and 29, 2017 (Egan Decl. Ex. A, ECF No. 38-1); and photographs of that iPhone on March 28 and 30, 2017, both showing the Ticketmaster page where Plaintiff attempted to purchase tickets for the Counting Crows concert, including the message: "Sorry we don't have any accessible seating available at the moment" (Egan Decl. Exs. B & C, ECF Nos. 38-2, 38-3).

9

4, ¶ 5.) Plaintiff asserts that because he could not purchase tickets, he never signed in (Pl.'s Resp. in Opp'n, ECF No. 37, at 16–17), and Defendant has not demonstrated otherwise.

Defendant further argues that because "the home page and virtually all interior pages" (Han Decl., ECF No. 35-4, ¶ 4) of Ticketmaster's website include the disclosure that "[b]y continuing past this page, you agree to our Terms of Use," Plaintiff necessarily navigated past a page while attempting to purchase Counting Crows tickets that bound him to the Terms of Use, including the arbitration provision. (Def.'s Br. in Supp. of Mot. to Compel Arbitration, ECF No. 36, at 4–5.) Once again, the evidence in the record does not establish this. Defendant submitted exhibits showing that a consumer traveling from the Homepage to the Create Account/Sign-In page and ultimately to the Payment page would navigate past these Terms of Use disclosures; however, Plaintiff asserts he did not visit any of those pages when he attempted to purchase Counting Crows tickets in 2017. (Pl.'s Resp. in Opp'n, ECF No. 37, at 16–17.) Rather, Plaintiff was taken directly to the ticket sales page on Defendant's website through a link on the Counting Crows' Facebook page, therefore bypassing the Homepage. (Egan Decl., ECF No. 38, ¶¶ 4–9.)

Plaintiff asserts that the only page he visited is the page depicted in Exhibit B of Plaintiff's Declaration, ECF No. 38-2, which is the Ticketmaster page where Plaintiff attempted to purchase tickets for the Counting Crows concert. (Egan Decl. Ex. B, ECF No. 38-2.) This page includes the message: "Sorry we don't have any accessible seating available at the moment." (*Id.*) Because accessible seats were unavailable, Plaintiff was unable to continue to another page. (Egan Decl., ECF No. 38, ¶ 9.) The Terms of Use disclosure is not visible in Exhibit B (although the photo does not show the bottom of the webpage), and Defendant has not submitted a screenshot of this page into the record.

10

Although David Han's Declaration states that "virtually all" pages include the Terms of Use disclosure, *virtually all* does not mean *all*, and the Court has no record evidence to conclude that the disclosure was necessarily present on this page when Plaintiff viewed it. In fact, the only similar exhibit submitted by Defendant is Exhibit M to David Han's Declaration, which is a screenshot of the "Event Info" page for a Rob Delaney comedy show on May 12, 2012, which appears to the Court to be from the mobile version of the website. (Han Decl. Ex. M, ECF No. 35-17.) Crucially, Exhibit M does *not* include the Terms of Use disclosure at the bottom of the page. (*Id.*) Accordingly, based on the evidence of record, the Court cannot conclude that Plaintiff's visits to this page on March 28 and 29, 2017, bound him to Defendant's Terms of Use.

Even if the Terms of Use disclosure was present on this page, this alone would not be enough to evidence an agreement to arbitrate, because Defendant has not established that Plaintiff "continued past" the page shown in Plaintiff's Exhibit B, or had previously navigated past a page containing the Terms of Use disclosure in order to reach the page in Exhibit B. That is, Defendant has not demonstrated that Plaintiff actually consented to the Terms of Use by interacting with the website. Defendant asserted during oral argument that the Court could presume that after Plaintiff arrived at Ticketmaster's website through the link on the Counting Crows Facebook page, he would have had to click something to receive the message, "Sorry we don't have any accessible seating available at the moment." (*See* Egan Decl. Ex. B, ECF No. 38-2.) This click (perhaps to request accessible seating), according to Defendant, would constitute "continuing past" the initial page and would bind Plaintiff to the Terms of Use. But Defendant has not demonstrated that Plaintiff necessarily clicked anything—none of the exhibits show a Ticketmaster page that Plaintiff would have had to have seen immediately before the page depicted in Exhibit B. Defendants' exhibits are of no help in this regard, since none of them pertain to the actual page or pages

Plaintiff's Complaint alleges that he visited on March 28 and 29, 2017.[8] Accordingly, considering the evidence in the record, the Court cannot conclude that there necessarily was a valid agreement to arbitrate based on Plaintiff's 2017 purchase attempt.

### D. Arbitration Delegation Clause

Defendant asserts that because the arbitration provision contains a delegation clause providing that the arbitrator shall decide the arbitrability of this dispute, the Court's inquiry is limited to whether Defendant's assertion of arbitrability is "wholly groundless." (Def.'s Reply to Pl.'s Resp., ECF No. 40, at 1–3.) Defendant is incorrect. For the Court to apply the delegation clause, it would first need to determine that the parties agreed to arbitrate. *See, e.g.*, *Guidotti*, 716 F.3d at 771, 773. Given the Court's conclusion that there is not sufficient evidence in the record to support a finding that there was an agreement to arbitrate, there is similarly not sufficient evidence that the parties agreed to delegate the issue of arbitrability of a particular dispute to an arbitrator.[9]

---

[8] The Court notes that in his Complaint, Plaintiff alleges that he entered the presale code "CROWS17" into Defendant's website. (Compl., ECF No. 1, ¶ 20.) But evidence that in doing so, Plaintiff necessarily "continued past" a page containing the Terms of Use disclosure is similarly missing from the record.

[9] But, given the large evidentiary (and logical) gaps in the record advanced by Defendant as the Court has noted above, the Court also concludes that Defendant's argument to compel arbitration is "wholly groundless." Defendant controls all of the electronic information that would back up its arguments, and for the reasons noted, what it has advanced fails to demonstrate the existence of an actual agreement to arbitrate anything. From where the Court sits, that does make the argument that Plaintiff actually (as opposed to "could have," or "might have") agreed to send any question to an arbitrator "wholly groundless."

12

## IV. Conclusion

For the reasons stated in this Opinion, Defendant's Motion to Compel Arbitration, ECF No. 35, is denied.

An appropriate Order will issue.

*/s/ Mark R. Hornak*
Mark R. Hornak
United States District Judge

Dated: March 12, 2018
cc: All counsel of record